IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 18-00167 HG-02 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| YVONNE CAITANO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 193)**

Defendant is currently incarcerated at the Federal Medical Center Carswell in Texas with a projected release date of June 30, 2024.

Defendant has filed a Motion seeking immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant seeks release due to the COVID-19 pandemic.

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

Defendant's EMERGENCY MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 193) is **DENIED.**

**STANDARD OF REVIEW**

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances. <u>Dillon v.</u>

1

United States, 560 U.S. 817, 824-25 (2010).

On December 21, 2018, Congress passed the First Step Act of 2018.  PL 115-391, December 21, 2018, 132 Stat. 5194.  The First Step Act amended 18 U.S.C. § 3582(c), the statute governing the limited circumstances under which the trial court may evaluate a motion for reduction of sentence.

The First Step Act altered the statute in Section 3582(c)(1)(A) to allow a defendant to request the trial court reduce his sentence through a motion for compassionate release, but the statute requires the defendant to first present his request for release to the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment...after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (I)  extraordinary and compelling reasons warrant such a reduction;
>
> ...
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

## SECTION 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT

### A.    Mandatory Procedural Requirement

The statute allows the Court to consider a defendant's request for compassionate release only after the defendant has first presented the request to the Bureau of Prisons ("BOP").  18 U.S.C. § 3582(c)(1)(A); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Parties agree that Defendant has complied with the procedural requirement of 18 U.S.C. § 3582(c)(1)(A) and that the Court may consider the motion for compassionate release.

### B.    Merits Of Defendant's Request For Compassionate Release

If a defendant has complied with the mandatory procedural requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the District Court may reduce a term of imprisonment, including the grant of compassionate release, upon finding "extraordinary and compelling reasons" consistent with applicable policy statements of the Sentencing Commission.

The Sentencing Commission's policy statement is provided in United States Sentencing Guidelines § 1B1.13:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A)    Extraordinary and compelling reasons

3

warrant the reduction; or

    (B)    The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

  (2)    The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

  (3)    The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

If Defendant is not 70 years of age and was not sentenced pursuant to 18 U.S.C. § 3559(c), Defendant is only entitled to relief if she demonstrates:

  (1)  extraordinary and compelling reasons warrant a sentence reduction;

  (2)  she is not a danger to the safety of others or the community; and,

  (3)  any requested reduction is consistent with the policy statement.

United States v. Gill, 2020 WL 2084810, *2 (E.D. Cal. Apr. 30, 2020).

## C.  Extraordinary And Compelling Reasons

The Sentencing Commission's Commentary Application Notes for Guideline § 1B1.13 provides the definition of "extraordinary and compelling reasons."  The Court agrees with the majority of the district courts in the Ninth Circuit that have concluded that

4

Section 1B1.13 and its definition of "extraordinary and compelling reasons" applies to motions for compassionate release even though the sentencing guideline was not separately amended following the passage of the First Step Act.  See Riley v. United States, 2020 WL 1819838, *8 (W.D. Wash. Apr. 10, 2020) (collecting cases); United States v. Shields, 2019 WL 2359231, *4 (N.D. Cal. June 4, 2019).

Sentencing Guideline Section 1B1.13's Commentary Application Notes explain that extraordinary and compelling reasons exist when:

    (A)  **Medical Condition of the Defendant.**–

        (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is—

            (I)      suffering from a serious physical or medical condition,

            (II)     suffering from a serious functional or cognitive impairment, or

            (III)    experiencing deteriorating physical or mental health because of the aging process,

            that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B)  **Age of the Defendant.**–The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration

5

in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**–
  (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Court has the discretion to determine whether other extraordinary and compelling reasons exist, as stated in paragraph (D), when ruling on motions for compassionate release. United States v. Hernandez, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020).

## PROCEDURAL HISTORY

In 2015, Defendant Yvonne Caitano became the office manager and personal assistant to Dr. Ernest Bade at his medical clinic in Hilo, Hawaii.  (Presentence Report at ¶ 18, ECF No. 170).  As office manager, Defendant Caitano oversaw and directed volunteer employees, including her daughter Sheena Strong; her mother Marie Benevides; and, Theresa Saltus.  (Id.)  Neither Defendant Caitano nor any of the volunteer employees were licensed medical care providers.  (Id.; Indictment at ¶¶ 9-12, ECF No. 48).

Defendant Caitano had Dr. Bade sign prescriptions for opiod medications for various individuals without medical necessity. (Presentence Report at ¶ 27, ECF No. 170).  Dr. Bade often paid Defendant Caitano in pills for her work as office manager and assistant.  (Id.)  Defendant Caitano took some of the pills for herself and devised a scheme to distribute the remaining opiod medication for profit.  (Id. at ¶¶ 25, 75).

Defendant devised and operated the distribution scheme with her daughter Strong; her mother Benevides; Saltus, as well as others, including her minor adoptive daughter, C.C., aged 15. (Id. at ¶¶ 20-35).

Defendant Caitano instructed her minor adoptive daughter to assist in the distribution of prescription pills at Caitano's personal residence.  (Id. at ¶ 25).  Defendant Caitano oversaw the operation and counted the pills with Strong and the minor child.  (Id. at ¶ 26).

By 2017, pharmacies in Hilo refused to fill some prescriptions written by Dr. Bade out of a concern that they were fraudulent.  Defendant Caitano devised a scheme for herself and her co-conspirators to fly to Maui once each month in order to fill fraudulent prescriptions written by Dr. Bade.  (Id. at ¶¶ 22, 27).  During the scheme, Defendant Caitano filled the same prescription multiple times at different pharmacies on Maui. (Id.)  Defendant Caitano used fake Maui addresses and provided false information to pharmacists.  (Id.)  After receiving the

7

pills, Defendant Caitano directed the sale of pills, maintained the supply, and handled the proceeds.  (Id. at ¶¶ 25-27).

On October 24, 2018, Defendant Caitano was charged along with Strong, Benevides, Saltus, and Dr. Bade for their illegal prescription drug distribution scheme.

Dr. Bade was found mentally incompetent to stand trial. (ECF No. 105).  A forensic psychiatrist appointed by the Court diagnosed Dr. Bade with Major Neurocognitive Disorder (Dementia), with notable cognitive deficits in memory, language, attention, motor skills, and social cognition.  (ECF No. 103-1 at pp. 27-28).  Dr. Bade had notable deficits in both short-term and long-term memory, spoke slowly, and frequently lost his train of thought and was unable to complete sentences.  (Id. at p. 28). Defendants Strong, Benevides, and Saltus each pled guilty.  The minor child was not charged.

Defendant Caitano was charged with three counts, as follows:

**Count 1:**  From May 2015 and continuing to on or about October 16, 2018, Defendant Caitano and a co-defendant knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to knowingly and intentionally distribute and dispense Schedule II and IV controlled substances, namely, Hydrocodone, Oxycodone, Morphine, Fentanyl, Carisoprodal, and Alprazolam outside the usual course of professional practice and not for a legitimate medical purpose in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(2) and 846;

**Count 42:**  From May 2015 through October 16, 2018, Defendant Yvonne Caitano and a co-defendant

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the grand jury, to distribute and possess with intent to distribute Schedule II and IV controlled substances, namely, Hydrocodone, Oxycodone, Morphine, Fentanyl, Carisoprodol, and Alprazolam in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), 841(b)(2), and 846;

**Count 43:** From January 2017 through on or about October 16, 2018, Defendant Caitano and three co-defendants knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the grand jury, to acquire and obtain possession of Schedule II and IV controlled substances, namely, Hydrocodone, Oxycodone, Morphone, Fentanyl, Carisoprodol, and Alprazolam by misrepresentation, fraud, forgery, deception, and subterfuge, in violation of 21 U.S.C. § 843 and 846.

(Indictment, ECF No. 48).

On October 8, 2019, Defendant Caitano pled guilty to Counts 42 and 43 in the Indictment. (ECF No. 125).

On October 22, 2019, the Government moved to dismiss Count 1, which the Court granted. (ECF No. 140).

On February 18, 2020, the Court held a sentencing hearing. (ECF No. 173). At the hearing, the Court ruled Defendant Caitano was an organizer, leader, manager, or supervisor of others in the scheme. (Id.) In addition, the Court found that Defendant was subject to a two-point increase in her sentencing guidelines because she involved her minor adopted daughter, C.C., aged 15, and her mother, co-defendant Marie Benevides, aged 81, in the drug distribution schemes. (Id.)

Defendant's adjusted offense level was 29 and the guideline imprisonment range was 87 to 108 months.  (Id.)

Defendant was sentenced to 60 months imprisonment as to Count 42, and 48 months as to Count 43, with the two terms to run concurrently.  (ECF No. 184).

On March 31, 2020, Defendant began serving her sentence.

On June 2, 2020, Defendant, proceeding pro se, filed an EMERGENCY MOTION FOR COMPASSIONATE RELEASE.  (ECF No. 187).

On June 4, 2020, the Court issued a Minute Order denying her Motion without prejudice due to her failure exhaust her administrative remedies before the Bureau of Prisons.  (ECF No. 188).

On June 29, 2020, the Court appointed Attorney Salina Kanai Althof to assist Defendant in seeking compassionate release. (ECF No. 190).

On the same date, Defendant, proceeding pro se, filed a Motion to Reduce Sentence.  (ECF No. 191).

On June 30, 2020, the Court issued a Minute Order setting forth the briefing schedule for Attorney Althof to assist the Defendant in seeking compassionate release.  (ECF No. 192).

On July 10, 2020, Defendant filed a MOTION FOR COMPASSIONATE RELEASE with the assistance of counsel.  (ECF No. 193).

On July 29, 2020, the Government filed its Opposition to Defendant's Motion.  (ECF No. 200).

On August 4, 2020, Defendant filed her Reply.  (ECF No. 201).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## ANALYSIS

Defendant Caitano is 56 years old.  Defendant is currently incarcerated at the Federal Medical Center ("FMC") Carswell in Texas.  Defendant bears the burden to demonstrate that extraordinary and compelling reasons exist that warrant immediate release from incarceration.  United States v. Greenhut, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020).

A defendant's general concerns about potential exposure to COVID-19 while incarcerated do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. United States v. Eberhart, 448 F.Supp.3d 1086, 1089-90 (N.D. Cal. Mar. 25, 2020); United States v. Carver,   F.Supp.3d   , 2020 WL 1892340, *3 (E.D. Wash. Apr. 8, 2020).

The Centers for Disease Control has identified certain categories of individuals that are at a higher risk for severe illness due to COVID-19.  The list includes people with conditions such as: chronic lung disease, moderate or serious asthma, serious heart conditions, obesity, chronic kidney disease, liver disease, diabetes, or individuals who are immunocompromised.  See United States v. Jones, Crim. No. 13-00860 LEK-03, 2020 WL 2331678, *5 (D. Haw. May 11, 2020).

I.   **Medical Condition**

    A.   **Current Centers For Disease Control Standards And Defendant's Medical Concerns**

The Centers for Disease Control ("CDC") has explained that, as of September 29, 2020, people with certain underlying medical conditions are at increased risk for severe illness from COVID-19, including Type 2 diabetes and obesity.  (CDC Coronavirus Disease 2019 (COVID-19) Website, available at http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC AA refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last visited 9/29/20).

The CDC has also stated that individuals "might be at an increased risk" for severe illness from COVID-19 when suffering from conditions including asthma and hypertension.  (Id.)

Defendant alleges that she suffers from Type 2 diabetes and obesity.  She also asserts that she has asthma, hypertension, polyneuropathy, cardiovascular problems, edema, and lower back pain, and that she requires a cane to walk.

    B.   **Medical Conclusion**

Defendant is 56 years old.  The CDC recognizes that the risk of developing severe illness from COVID-19 increases with age. Those 65 years of age or older are at increased risk and those 85 years and older at the greatest risk.  (https://www.cdc.gov/

12

coronavirus2019-ncov/need-extra- precautions/ older-adults.html, last visited 9/29/20).  Defendant's age does not place her in a category of increased risk of complications due to COVID-19.

On March 31, 2020, Defendant began serving her term of imprisonment at Federal Medical Center ("FMC") Carswell in Texas. (Medical Records at p. 73, attached as Ex. B to Def.'s Motion, ECF No. 197).  FMC Carswell is a Bureau of Prisons ("BOP") medical facility, which provides up to the highest level of medical care in the BOP system.  Defendant was examined by health care providers when Defendant reported to Carswell.  (Id.)  The facility conducted a review of Defendant's medical history and prescription medications.  Defendant was found to have Non-Insulin Dependent Diabetes.  (Id. at p. 74).  Defendant does not regularly take any medication for her diabetes condition.  (Id.)

Defendant was also found to have hypertension, high cholesterol, chronic constipation, neuropathy, and depression. (Id. at p. 77).  Defendant has been prescribed a number of medications for these conditions.  For hypertension, Defendant takes Aspirin, Clonidine, and Metoprolol Succinate.  (Id. at pp. 70-71).  Defendant takes Atorvastatin and Hydralazine for high cholesterol.  (Id. at pp. 38, 70).  Defendant takes Bisacodyl for constipation.  (Id. at p. 70).  Defendant takes Venlafaxine for depression.  (Id. at p. 58).  Defendant takes Gabapentin for neuropathy.  (Id. at p. 70).

Defendant also has a history of obesity.  (Presentence Report at ¶ 69, ECF No. 170).  As of April 17, 2020, Defendant

13

was 5'3" and weighed 211 pounds.  (Medical Records at p. 87, ECF No. 197).  The U.S. Department of Health & Human Services' Body Mass Index Calculator would conclude Defendant's Body Mass Index as 37.4 as of April 17, 2020.

Following Defendant's arrival at Carswell, she had an initial medical examination on March 31, 2020.  Defendant was placed in quarantine from April 1 to 15, 2020, due to the need for protection of the population from possible COVID-19 entering prisons.  (Id. at pp. 24-69).

During her quarantine, Defendant received routine medical examinations.  (Id.)  In addition, Defendant Caitano complained of various issues to BOP staff during quarantine.  On April 1, 2020, Defendant complained of back and leg pain and was given 2 Tylenol.  (Id. at pp. 67-68).  On April 2, 2020, Defendant again complained of pain and she was prescribed a Ketorolac Injection. (Id. at p. 62).

Also on April 2, 2020, 25 minutes after Defendant's complaint of pain, Defendant was examined for mental health complaints.  (Id. at p. 58).  A BOP medical doctor made changes to Defendant's antidepressant medication.  (Id.)  Defendant requested medical attention later that same day, and stated, "I'm ok, just lonely."  (Id. at p. 57).

On April 8, 2020, Defendant complained that "her heart [was] beating fast."  (Id. at p. 47).  Staff conducted an examination and determined that she has "a regular pulse".  (Id.)

Following Defendant's release into the general population,

14

BOP medical staff continued to provide services to Defendant at her request.  Defendant was found to have swelling in her legs and a history of back pain.  (Id. at pp. 17-20).

On May 5, 2020, Defendant complained of a fast heartbeat, but an Electrocardiogram was administered and determined there was no Atrial fibrillation or irregular heartbeat.  (Id. at pp. 17-18).

On May 13, 2020, Defendant was referred to physical therapy following complaints of continued back pain.  (Id. at p. 9).  A complete analysis was conducted and although she required a cane to walk, Defendant did not "appear to have any physical impairments preventing her from completing her activities of daily living."  (Id. at p. 10).

Defendant's Motion claims that she suffers from asthma. (Motion at p. 2, ECF No. 193).  Neither Defendant's medical records nor the Presentence Report provide any history or diagnosis of asthma.  (Def.'s Medical Records, attached as Ex. B to Def.'s Motion, ECF No. 197; Presentence Report at ¶¶ 69-71, ECF No. 170).

Defendant has provided her medical records from March 31, 2020, the day she began her incarceration, through May 28, 2020. (Id.)  In that two month period of time, Defendant was examined by BOP medical personnel on more than 20 occasions.  (Id.)  A review of the medical records demonstrates that some of Plaintiff's medical complaints were not supported by objective medical evidence.  (Id. at pp. 10, 18, 47, 57).

Defendant's medical records reflect that her conditions have been managed while she has been incarcerated.  The record demonstrates that Defendant has received and continues to receive appropriate medical care by the BOP.  (Def.'s BOP medical records attached as Ex. B to Def.'s Motion, ECF No. 197).

In the six months Defendant has been incarcerated, Defendant has not established a basis for compassionate release based on medical issues.  Defendant is housed at a Federal Medical Center and has been provided with appropriate treatment.  Defendant has been prescribed various medications to treat her medical conditions and continues to have access to medical care at FMC Carswell.  Conditions that can be managed in prison are not a basis for compassionate release.  United States v. Kazanowski, Crim. No. 15-00459 DKW-05, 2020 WL 3578310, *9 (D. Haw. July 1, 2020) (citing U.S.S.G. § 1B1.13 cmt. n.1(A)).

## II.  Section 3553(a) Factors And Defendant's History and Characteristics

### A.  History and Characteristics

In order to be eligible for compassionate release, Defendant must establish that release is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a) and that she is not a danger to the safety of others or the community.  18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

The Section 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of

16

the defendant, and the need for the sentence imposed.

Defendant is currently serving a sentence for being an organizer of a conspiracy to distribute large quantities of opioids and other highly addictive controlled prescription medications.  (ECF No. 173).  Defendant worked as the manager for a medical clinic in Hilo where she conspired with others, including her own family members, to engage in drug trafficking. (Id.; Presentence Report at ¶¶ 16-27, ECF No. 170).

Defendant engaged in fraud and forgery in order to obtain the illegal prescription medications.  (Presentence Report at ¶¶ 16-27, ECF No. 170).  Defendant also used a child under 18 years old and a person over 65 years old to assist her in committing the drug crimes.  (ECF No. 173).

Defendant was held individually responsible for trafficking 118,839.6 milligrams of Oxycodone; 14,355 milligrams of Hydrocodone; 2.28 milligrams of Fentanyl; and, 4,009.5 milligrams of Morphine.  (Presentence Report at ¶ 43, ECF No. 170; ECF No. 173).

Defendant was in Criminal History Category I and was subject to a sentencing guideline range of 87 to 108 months imprisonment. The Court granted a variance and sentenced Defendant to a total of 60 months imprisonment.

## B.   Portion Of Sentence Served

A review of the caselaw demonstrates that the portion of the sentence already served by the defendant is a necessary factor

for the Court to consider in evaluating compassionate release. United States v. Connell,    F.Supp.3d.   , 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).  The amount of time served of the originally imposed sentence must be considered pursuant to Section 3553(a) to ensure that the amount of time adequately reflects the seriousness of the offense, deters criminal conduct, and protects the public.  United States v. Barber,    F.3d   , 2020 WL 2404679, *5 n.9 (D. Ore. May 12, 2020).

At the time she filed her Motion with the assistance of counsel in July 2020, Defendant had served approximately 4 months of her 60-month sentence.

## C.  Appropriateness of Immediate Release

The Court finds that the nature and circumstances of Defendant's offense weigh in favor of her 60-month sentence. Defendant pled guilty to trafficking in highly addictive opiod medications.  Defendant also pled guilty to using fraud and forgery to engage in drug trafficking.  Defendant used her minor adoptive daughter and her elderly mother to engage in the scheme. Defendant used her position as an office manager of a medical clinic and the dementia of the medical doctor to organize and manage the drug trafficking conspiracy.

Defendant has served approximately 10% of her 60-month sentence.  Defendant's immediate release would not adequately reflect the seriousness of the offense, would not properly deter similar criminal conduct, and would not protect the public.  The

18

factors in Section 3553(a) do not support the immediate release of the Defendant.

**III.  Summary Of Medical Conclusion And Section 3553(a) Factors**

Defendant has not established a basis for compassionate release because of her medical issues.  The record does not demonstrate that she is suffering from a terminal health condition or a condition that substantially interferes with her ability to provide self-care while incarcerated.  Defendant has been able to manage her medical conditions while incarcerated.  Defendant is at a BOP medical facility.  The record demonstrates that Defendant has received and continues to receive appropriate medical care while incarcerated.

Defendant was convicted of serious crimes and has only served approximately 10% of her sentence.  Defendant has not established that her immediate release is warranted pursuant to the Section 3553(a) factors.

//
//
//
//
//
//
//
//
//

19

## <u>CONCLUSION</u>

Defendant's Emergency Motion To Reduce Sentence Under The

First Step Act (COMPASSIONATE RELEASE) (ECF No. 193) is **DENIED.**

IT IS SO ORDERED.

Dated: September 29, 2020, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

<u>United States v. Yvonne Caitano</u>, Crim. No. 18-00167 HG-02; **ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (ECF No. 193)**

20